1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANITA PICKENS,

11              Plaintiff,                    No. CIV S-05-0459 KJM

12        vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15              Defendant.                    ORDER

16   _____/

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under

19   Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will grant

20   plaintiff's motion for summary judgment; deny the Commissioner's cross-motion for summary

21   judgment, and remand for immediate payment of benefits.

22   /////

23   /////

24   /////

25   /////

26   /////

I. Factual and Procedural Background

      In a decision dated May 25, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of migraine headaches, cervical and lumbar pain, fibromyalgia and depression but these impairments do not meet or medically equal a listed impairment; plaintiff is not totally credible; plaintiff can perform a full range of medium work in a task oriented job, can carry out simple job instructions, requires a low stress job, and cannot work at unprotected heights, around dangerous machinery, or drive; plaintiff cannot perform her past relevant work; and using Medical-

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

      Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
      Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
      Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
      Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
      Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

      The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1    Vocational Rule 203.26 and the testimony of a vocational expert as to available jobs, plaintiff is

2    not disabled.  Administrative Transcript ("AT") 25-26.  Plaintiff contends the ALJ committed

3    several errors; dispositive, however, is plaintiff's contention that the hypothetical questions

4    posed to the vocational expert, which were relied on by the ALJ in finding plaintiff was not

5    disabled, were incomplete.

6    II.  Standard of Review

7            The court reviews the Commissioner's decision to determine whether (1) it is

8    based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

9    record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

10   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

11   Substantial evidence means more than a mere scintilla of evidence, but less than a

12   preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

13   Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

14   reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

15   U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

16   197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

17   782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

18   detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

19   1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

20   supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

21   substantial evidence supports the administrative findings, or if there is conflicting evidence

22   supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

23   Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

24   improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

25   1335, 1338 (9th Cir. 1988).

26   /////

3

III.  Analysis

Plaintiff contends the ALJ committed error by failing to include all of the limitations assessed by the psychiatric examiners in the questions posed to the vocational expert. Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff asserts the ALJ omitted critical limitations assessed by the psychiatric examiners in the hypotheticals posed to the vocational expert.  See especially Reply at 2-3. Plaintiff is correct.  In an assessment dated August 29, 2002, psychiatric examiner Dr. Tyl opined plaintiff would have "increased sensitivity to criticism, which may make interactions with supervisors, co-workers, and the public difficult.  [Plaintiff] would likely be able to perform some work activities on a consistent basis and maintain regular attendance in the workplace under certain conditions.  She may require a modified workday.  She would certainly require an understanding supervisor and ongoing psychiatric support and supervision."  AT 304-305. Psychological examiner Dr. Pierce, in an assessment dated September 15, 2003, opined plaintiff "would have moderate-to-greater challenges working effectively with others due to her developmental compromise and the related borderline personality features."  AT 364.  Dr. Pierce also assessed plaintiff as having moderate restrictions in the ability to interact appropriately with the public and more than moderate restrictions in the ability to interact appropriately with supervisors.  AT 366.  In the body of his decision, the ALJ noted both psychiatric examiners

4

found plaintiff was limited to jobs with no public contact; yet the ALJ did not include this

limitation in either the final residual functional capacity as he assessed it, or in the hypothetical

he relied on in finding plaintiff was not disabled.  AT 23, 25, 52.  The additional limitations set

forth by Drs. Tyl and Pierce were included in the hypothetical posed by plaintiff's attorney, but

not in the hypotheticals posed by the ALJ.  AT 52-55.  Although the ALJ expressly credited the

opinions of the psychiatric examiners, the ALJ offered no reason for not including the additional

limitations posed by plaintiff's counsel other than "the facts presented in the additional

hypothetical questions are not supported by the  record."  AT 23, 25.  This barren statement does

not meet the Commissioner's burden of setting forth sufficient reasons for rejecting an

examining physician's opinion.[2]  On this record, the court cannot find substantial evidence

supports the hypothetical that served as the basis of the disability determination.

The hypothetical posed by plaintiff's counsel also included physical limitations

based on a physical capacities evaluation from one of plaintiff's treating physicians, Dr. Rinzler.

AT 53, 368-369.  Although defendant contends Dr. Rinzler is not a treating physician, plaintiff

testified she was seen by this doctor twice at Kaiser for symptoms related to carpal tunnel

syndrome.  AT 35-36.  The sole reason given by the ALJ for rejecting Dr. Rinzler's assessment

was that no treatment records were provided to support the assessment.  AT 21.  This reason is

plainly contradicted by the record.  As is evident from the Kaiser records submitted, plaintiff has

been seen by a variety of doctors and her chart is available to all the physicians who treat her at

Kaiser.  AT 209-277.  Dr. Rinzler's assessment was based on his diagnosis of probable

fibromyalgia syndrome, cervical disc protrusion at C5-6, possible carpal tunnel syndrome and

depression.  AT 369.  The Kaiser records are replete with references to plaintiff experiencing

---

[2] An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995).  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Lester, 81 F.3d at 830.

1  symptoms related to fibromyalgia, including chronic pain syndrome and fatigue.[3]  AT 222, 223,

2  224, 231, 235, 236, 244, 249, 258, 261.  On this record, the reason given by the ALJ for rejecting

3  Dr. Rinzler's assessment is neither specific nor legitimate.  The ALJ committed error, therefore,

4  in omitting Dr. Rinzler's limitations in the hypothetical posed to the vocational expert.

5       The decision whether to remand a case for additional evidence or simply to award

6  benefits is within the discretion of the court.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir.

7  1990).  Here, the ALJ improperly rejected the opinions of Drs. Pierce and Tyl with respect to

8  plaintiff's psychiatric limitations and the opinion of Dr. Rinzler with respect to plaintiff's

9  physical limitations.  Where the ALJ "fails to provide adequate reasons for rejecting the opinion

10  of a treating or examining physician, [the court] credit[s] that opinion as a matter of law."  Lester

11  v. Chater, 81 F.3d 821, 834 (9th Cir.1995).  When all of the limitations assessed by Drs. Pierce,

12  Tyl and Rinzler were included in a hypothetical posed to the vocational expert, the response was

13  that no jobs would be available to plaintiff.  AT 54-57, 304-305, 364, 366, 368-369.  If the

14  opinions of these doctors are properly credited, plaintiff must be found disabled.  Under these

15  circumstances, an award of benefits is appropriate.

16       For the foregoing reasons, this matter will be remanded under sentence four of 42

17  U.S.C. § 405(g) for immediate payment of benefits.

18  /////

19  /////

20  
21  [3] "Fibromyalgia is a form of rheumatic disease with no known cause or cure.  The principal symptoms, which are entirely subjective, are pain and tenderness in muscles, joints and ligaments, but the disease is frequently accompanied by fatigue, sleep disturbances, anxiety,

22  dizziness, irritable bowels and tension headaches."  Walker v. American Home Shield Long Term Disability Plan, 180 F.3d 1065, 1067 (9th Cir. 1999) (citing Arthritis Foundation Pamphlet, Fibromyalgia 6-8 (1989)).  "The principal symptoms are 'pain all over,' fatigue, disturbed sleep,

23  stiffness, and . . . multiple tender spots, more precisely 18 fixed locations on the body (and the

24  rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch."  Sarchet v. Chater, 78 F.3d

25  305, 306-07 (7th Cir. 1996).  Although eleven trigger points were not always evident on examination, the Kaiser doctors noted plaintiff presented with a similar constellation of

26  symptoms of pain and fatigue.  AT 224, 258.

1              Accordingly, IT IS HEREBY ORDERED that:

2           1.  Plaintiff's motion for summary judgment is granted.

3           2.  The Commissioner's cross-motion for summary judgment is denied.

4           3.  This action is remanded to the Commissioner for immediate payment of

5 benefits.

6 DATED:  September 20, 2006.

7

8

9                         UNITED STATES MAGISTRATE JUDGE

10

11

12 006
13 pickens.ss

14

15

16

17

18

19

20

21

22

23

24

25

26